1 .PETTIGREW, J.
This is an action by a group of former dairy farmers who claim that a marketing association to which they belonged made improper deductions from their respective milk proceeds each month, in contravention of their marketing agreement. The farmers sought injunctive relief, a return of equity, and an accounting from the marketing association regarding all sums withheld.
FACTS
Earl Spears, Willie L. Busby, and Bobby Waskom (collectively, “plaintiffs”) were dairy farmers who produced milk in Washington and Tangipahoa Parishes. Plaintiffs originally belonged to a local farmers’ cooperative, Gulf Dairy Association, Inc. (“Gulf Dairy”), that marketed the milk produced by its members. Following a majority vote of its members, Gulf Dairy consolidated with Mid-America Dairymen, Inc. (“Mid-Am”),[2] a farmers’ cooperative association headquartered in Kansas. Pursuant to a “Consolidation Agreement” that became effective March 1, 1994, most of the assets of Gulf Dairy[3] were acquired by Mid-Am. Mid-Am also assumed the obligations of Gulf Dairy to its members.
Plaintiffs had existing contracts known as Membership and Marketing Agreements[4] with Gulf Dairy that authorized Gulf Dairy to withhold five cents per hundredweight[5] of milk for equity[6]. Mid-America’s Membership and Marketing Agreements provided for the withholding of an unspecified amount from proceeds as capital retains.[7]
| .Additionally, the provisions of the Consolidation Agreement converted the “retained equity” accounts formerly held by Gulf Dairy from a 10-year revolvement (repayment schedule) to an 8-year revolvement.
A dispute arose over the calculation of certain deductions made by Mid-Am, and in 1995, plaintiffs made requests for information regarding the amounts withheld by Mid-Am from their milk proceeds. On March 28, 1996, plaintiffs instituted this action in the 22nd Judicial District Court in and for the Parish of Washington, State of Louisiana, seeking an accounting and return of the money withheld from their milk proceeds. Plaintiffs also requested a preliminary injunction restraining Mid-Am from making the deductions.[8]
ACTION OF THE DISTRICT COURT
Mid-Am subsequently removed this action to federal court asserting grounds of diversity of citizenship and amount in controversy. Plaintiffs were later able to have this matter remanded to state court based upon a stipulation that the amount in controversy as to each plaintiff would *1272 not exceed $50,000.00, and further, that even if their claims were to be aggregated, the resultant sum would not exceed $50,000.00.
Following a hearing on plaintiffs’ initial plea for a preliminary injunction, the district court declined to issue the injunction and concluded that after Gulf Dairy’s merger with Mid-Am in March 1994, plaintiffs had chosen to stay with Mid-Am and assigned to it their milk marketing contract. The district court further held that when plaintiffs chose to stay with Mid-Am, they knew that Mid-Am’s business practice was to retain one percent of their milk proceeds for capital retains.[9]
On October 10, 1998, a petition of intervention was filed into the proceedings by J. Paul Alford and Tangi-Wash Dairy, Inc; Kirby L. Varnado and Darrell L. Varnado; Udderfresh Dairy, Inc.; Edwin J. Walker, Jr.; Chad D. Walker, W.D. Walker, Jr.; Mark R. |4Waskom; Johnny M. Bankston and Bankston Udderwise Dairy, Inc.; Clayton Knight, Carole Knight and James Knight; Lane Graham and Justin Graham; Schiro’s Dairy and Golden Gate Dairy Farm (collectively, “intervenors” or “plaintiffs/intervenors”) .[10]
A joint motion to bifurcate the trial was filed on September 23, 1998. With this motion, the parties agreed to try only the following liability issues: (1) whether as a result of the transaction between Mid-Am and Gulf Dairy the plaintiffs/intervenors became members of Mid-Am and subject to Mid-Am’s Articles of Incorporation and bylaws; (2) whether as a result of that transaction, the membership and marketing agreements held by plaintiffs/interve-nors remained in full force and effect; and (3) whether the equity deductions by Mid-Am were proper and authorized. The parties agreed to try the remaining issues of alleged liability, accounting, and damages for the alleged breach of plaintiffs Gulf Dairy contracts at a later date.
Prior to trial, the parties entered into numerous stipulations. It was agreed that the Gulf Dairy membership and marketing agreements were assigned to Mid-Am, but retained their original termination dates. It was further stipulated that none of the plaintiffs/intervenors individually signed a Membership and Marketing Agreement with Mid-Am, with the exception of Lane Graham and Justin Graham.[11]
The first phase of this matter was ultimately tried on April 12, 1999. In a judgment signed August 26, 1999, the district court ruled that a de facto merger took place between the two groups, and as a result, plaintiffs/intervenors became members of Mid-Am. Additionally, the court found that the Gulf Dairy marketing agreements were no longer in effect, and after the effective date of the Consolidation Agreement, the articles and bylaws of Mid-Am controlled the relationship between plaintiffs/intervenors and Mid-Am. Finally, the district court concluded that either by | ¡^modification of the existing marketing agreement, or upon application of the by-laws and articles, the plaintiffs’/intervenors’ marketing agreements provided for a one percent deduction of milk proceeds for capital retains. The *1273 court further concluded that the deductions made by Mid-Am from plaintiffs’/in-tervenors’ milk proceeds for capital retains were lawful and authorized.
Plaintiffs/intervenors evidently accepted the district court’s ruling that a “defacto merger” made them members of Mid-Am. On September 10, 1999, plaintiffs/interve-nors moved for summary judgment claiming that based upon the court’s earlier ruling, they had no written marketing agreement with Mid-Am. Plaintiffs/inter-venors argued that absent a written agreement, the only permissible deductions were those required by federal regulations or authorized by federal law. Accordingly, plaintiffs/intervenors claimed that there existed no genuine issue of material fact in deriving the amount owed to them by Mid-Am. Following a hearing on October 7, 1999, the district court denied plaintiffs’/in-tervenors’ motion for summary judgment on October 29,1999.
On April 14, 2000, plaintiffs/intervenors filed an amended petition alleging that since the institution of suit, capital retains had not been revolved in accordance with the Consolidation Agreement. Plaintiffs/intervenors claimed that in connection with the consolidation, certain immovable property was conveyed to Mid-Am. The title deed recited that the consideration for the conveyance of the property was Mid-Am’s assumption of certain liabilities of Gulf Dairy including the obligation to satisfy Gulf Dairy’s equity obligation to its members. Accordingly, plaintiffs/interve-nors prayed for judgment in the full sum of the balance of their respective capital equity accounts, together with legal interest from the date of original demand and for all costs of these proceedings.
| fiPrior to the second phase of the trial, the parties once again stipulated that some plaintiffs/intervenors did not have milk marketing agreements with Mid-Am.[12] The issues before the court in this trial were: (1) whether the non-equity deductions from plaintiffs’/intervenors’ checks were proper and authorized in view of the district court’s previous determination that there was no milk marketing agreement or other written document between the parties; and (2) whether there was a breach of contract and failure to pay equity in connection with the real estate transfer between the two cooperatives.
On September 5, 2000, a trial was held on the remaining issues. Through written reasons for judgment, the district court adopted by reference its earlier findings from the trial of April 12, 1999. The court also held that plaintiffs/intervenors, as members of Mid-Am, had marketed their milk through the cooperative and were responsible for a proportionate share of the costs and expenses associated therewith. Additionally, the court held that the articles of incorporation and by-laws of Mid-Am authorized it to withhold said costs and expenses and to determine the pay-out of equity to members. The district court further held that the deductions made by Mid-Am were proper and that plaintiffs’/intervenors’ claims for reimbursement were barred by equitable estop-pel and unjust enrichment. As to the allegations of breach of contract and failure to pay equity with regard to the transfer of property between Gulf Dairy and Mid-Am, the court determined that plaintiffs/inter-venors lacked standing to raise this issue as they were not parties or third party beneficiaries to the transaction. The court concluded that in any event, consideration *1274 existed for the transaction. In sum, the court held that Mid-Am’s by-laws gave its directors the authority to determine the repayment of equity and that plaintiffs’/in-tervenors’ amended petition was ill-founded.
Plaintiffs/intervenors have appealed said judgment to this court.
^ASSIGNMENTS OF ERROR
In connection with their appeal in this matter, plaintiffs/intervenors present the following assignments of error:
1. The Trial Court erred in its finding that the Articles and Bylaws of MidAm “authorized the cooperative to withhold those costs and expenses” which [finding] is not supported by the evidence contained in the record or law.
2. The Trial Court erred in applying an affirmative defense never pleaded by [Mid-Am] as a bar to [plaintiffs’/interve-nors’] reimbursement for money deducted by MidAm without proper authority.
3. The Trial Court erred in finding “silence” on the part of [plaintiffs/interve-nors] as the necessary element to prove estoppel as the affirmative defense that was never pleaded; the record supports a finding of steady complaint and does not support a finding of “silence.”
4. The Trial Court erred in finding that [plaintiffs/intervenors] lacked standing to claim payment of Gulf Dairy former members’ equity due them in connection with the Cash Deed between Gulf Dairy Association and MidAm.
DISCUSSION
The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La. Const. art. V, § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). If the court of appeal finds that a reversible error of law or manifest error of fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840, 844, n. 2 (La.1989).
The litigation presently before this court is a convoluted morass with several prior rulings by the district court. This court feels compelled to remind the litigants that only the most recent judgment is presently before us in this appeal. Having said this, we turn now to the first error raised by plaintiffs/intervenors.
| sDeductions of Costs and Expenses
In their initial assignment of error, plaintiffs/intervenors assert that the district court erred in denying their claim and finding that the articles and bylaws of Mid-Am authorized Mid-Am to withhold certain costs and expenses from their respective milk proceeds. Plaintiffs/interve-nors argue that this finding is neither supported by the evidence contained in the record nor applicable law.
Plaintiffs/intervenors apparently concede that the judgment rendered by the district court in the first phase of the trial was not appealed and has now become the law of the case.[13] Upon review, this court notes that while the district court ruled in the first trial that the Gulf Dairy marketing agreements were no longer in effect, the court further determined that, “The *1275 members did not have to sign new contracts with Mid-Am as a prerequisite to membership, and any failure to do so had no impact as to the financial terms such as equity or compensation of milk sales.” The district court further held that either by modification of the existing marketing agreements or by application of the Mid-Am articles or bylaws, plaintiffs’/interve-nors’ marketing agreements provided for a one percent deduction of milk proceeds for capital retains that was legal and authorized.
In its Reasons For Judgment in the second trial, the district court reaffirmed its earlier ruling stating that “This Court has made findings of fact from the [previous] trial of April 12, 1999, which are applicable, binding, and determinative of the legal issues now raised by the plaintiffs/intervenors. They are adopted by reference in these reasons.” The district court’s judgment in the second trial also specifically referenced and reaffirmed the findings of fact and law made by the court in the first trial.
Due to plaintiffs’/intervenors’ failure to appeal from the effects of the judgment in the first trial, that judgment has now become final. Thus, in fight of the district court’s determination in the first trial that plaintiffs/intervenors were not required to | flSign new contracts with Mid-Am as a prerequisite to membership, plaintiffs/in-tervenors are precluded from raising said issue at this juncture. This assignment is without merit.

Equitable Estoppel

The second and third errors assigned by plaintiffs/intervenors relate to the application by the district court of an affirmative defense that they assert was never pleaded by Mid-Am as a bar to plaintiffs’/interve-nors’ recovery.
Mid-Am contends that during their years of Mid-Am membership, the plaintiffs/intervenors paid their respective shares of co-op expenses through deductions from their milk proceeds. Mid-Am further claims that because plaintiffs/inter-venors always cashed their Mid-Am checks without formal protest, and reaped the benefits of cooperative marketing, they tacitly accepted Mid-Am’s deductions for costs and expenses. It is the position of Mid-Am that plaintiffs/intervenors are accordingly now estopped from complaining.
Plaintiffs/intervenors argue that Mid-Am only pleaded estoppel in answer to plaintiffs’/intervenors’ amending petition regarding the conveyance of immovable property. It is the position of plaintiffs/in-tervenors that the district court lacked both the power and authority to grant relief to Mid-Am based upon an affirmative defense that Mid-Am never pleaded, by amendment or by exception.
Based upon our foregoing disposition of the deductions issue, the issue of whether the affirmative defense of estoppel was timely pleaded by Mid-Am is moot. These assignments of error are similarly without merit.

Conveyance of Immovable Property

Finally, plaintiffs/intervenors assert that the district court erred in finding that they lacked standing to claim payment of equity due them as former members of Gulf Dairy in connection with the transfer of immovable property between Gulf Dairy and Mid-Am.
Pursuant to an executed deed dated March 1, 1994, and filed in the conveyance records of Tangipahoa Parish, Gulf Dairy conveyed to Mid-Am certain parcels of land Imupon which the Gulf Dairy milk plant and cheese facility were located. It was specifically recited in the deed that:
This sale and conveyance is made and accepted for and in consideration of [Mid-Am’s] assumption of the “Assumed *1276 Liabilities” of [Gulf Dairy] and the acceptance by [Mid-Am] of the obligation to satisfy the equity obligation of [Gulf Dairy] to its members, all as defined and provided for in the “Consolidation Agreement” by and between [Gulf Dairy] and [Mid-Am],
Plaintiffs/intervenors assert that Mid-Am has not satisfied the equity obligations of Gulf Dairy that it assumed and now owes to Gulf Dairy’s former members. Mid-Am has since merged with Dairy Farmers of America (“DFA”), and plaintiffs/intervenors argue that the capital structure of DFA is completely different from Mid-Am and Gulf Dairy.
In a letter from DFA dated August 1, 2000, DFA advised former members that its “goal” was to return the entire balance of former members’ equity accounts within 10 years from the date a member ceased marketing with DFA or one of its predecessors. The letter cautioned that retirements of equity were always subject to approval by DFA’s board based upon its current financial condition. DFA further advised that in the event a former member desired to liquidate his equity account pri- or to the elapse of 10 years, a special fund had been created to settle inactive accounts at a discounted rate.
In its written reasons for judgment, the district court stated in pertinent part:
Plaintiff/Intervenors also raise the issue of failure of consideration regarding the transfer of property between Gulf Dairy and Mid-America Dairymen, Inc. The Court concludes that plaintiffs/in-tervenors lack standing to raise this issue, as they were not parties or third party beneficiaries to the transaction. The Court also concludes that irrespective of standing, consideration for the transaction existed.
Finally, the Court concludes that the Mid-America Articles and Bylaws give its Board of Directors the authority to determine repayment of equity in an effort to respond to the marketplace and the cooperative’s need for capital. Their determination is therefore lawful and authorized and plaintiffs/intervenor’s [sic] amended petition is ill founded.
Plaintiffs/intervenors argue that the district court erred in its determination that because the former members of Gulf Dairy were not parties in the Mid-Am transaction, they could not be considered third party beneficiaries. In support of their argument, plaintiffs/intervenors cite La. Civ.Code art.1978, which provides:
In A contracting party may stipulate a benefit for a third person called a third party beneficiary.
Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary’s agreement.
Plaintiffs/intervenors assert that in the instant case, the contracting party was Mid-Am, and they (as former members of Gulf Dairy) were third person beneficiaries who availed themselves of the benefit of annual revolvements of equity outlined in the Consolidation Agreement mentioned in the deed that conveyed the property. Plaintiffs/intervenors further assert that Mid-Am later changed the agreement unilaterally. It is the position of plaintiffs/in-tervenors, that the consideration recited in the deed was clear and unequivocal. While Mid-Am apparently revolved and paid equity for several years,[14] plain *1277 tiffs/intervenors urge that these payments are now in default.
We agree. Consideration for the transfer of the immovable property by Gulf Dairy was Mid-Am’s agreement to fulfill the obligation of Gulf Dairy to repay the equity of plaintiffs/intervenors, who were former members of Gulf Dairy. Mid-Am did not satisfy the equity obligations of Gulf Dairy to Gulf Dairy’s former members. Mid-Am thereafter merged with DFA. This is a potentially never-ending “shell game” wherein plaintiffs/intervenors may never realize the equity they are owed. We conclude that plaintiffs/intervenors are third party beneficiaries and are entitled to judgment for the full return of the former Gulf Dairy equity now held by DFA, subject to a credit for any amounts revolved.
CONCLUSION
For the above and foregoing reasons, the judgment of the district court is hereby affirmed in part, reversed in part, and remanded to the district court. We affirm the district court’s finding that Mid-Am had the authority to withhold funds from the milk proceeds of plaintiffs/intervenors. We nevertheless find that the district court clearly erred in its determination that sufficient consideration existed for the transfer of |12property between plaintiffs/intervenors and Mid-Am. Plaintiffs/intervenors are hereby awarded the full return of their respective former Gulf Dairy equities now held by DFA, subject to a credit for any amounts revolved, all with legal interest thereon, and for all costs of these proceedings.
We hereby remand this matter to the district court for further proceedings consistent with this opinion and for purposes of determining the respective amounts of plaintiffs’/intervenors’ former Gulf Dairy equities now held by DFA.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. Since the institution of this litigation, Mid-Am has been involved in a subsequent merger and is now known as Dairy Farmers of America.

. An $859,970.00 account receivable owed to Gulf Dairy by Brown’s Velvet Daily Products, Inc. was written off by Gulf Dairy as uncollected.

. The membership and marketing agreements between individual dairy farmers and their cooperatives are generally referred to as member "contracts.”

. A hundredweight is 100 pounds of milk, approximately 46 quarts or 11.4 gallons of milk, and is the standard pricing unit for raw milk.

. Also referred to as capital retains.

. Also referred to as equity retains or equity deductions.

. Mid-Am continued to make the disputed deductions until August 1997, when the last plaintiff left Mid-Am.

. We note from the record that in denying the preliminary injunction, the district court’s reasons for judgment mention only the first plaintiff; nevertheless the court's ruling was directed to all of the plaintiffs.

. Schiro’s Daily was later voluntarily dismissed without prejudice on January 8, 1999.

. It is undisputed that intervenors Lane Graham and Justin Graham later terminated their Membership and Marketing Agreement with Mid-Am effective August 25, 1997.

. It was stipulated by the parties in the first trial that "[n]one of the plaintiffs/intervenors signed a Membership Marketing Agreement (membership application) with Mid-Am with the exception of Lane Graham and Justin Graham.”

. In their brief to this court, plaintiffs/inter-venors stated that they did not appeal the first ruling because taken as a whole, the August 26, 1999 judgment was thought to be favorable.

. In the second half of the trial, Mrs. Carole Knight testified that she believed Mid-Am paid some portion of equity in 1998, although it was not as much as she had expected.